GOODHEART'S BROADWAY LAUNDRY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8406.   Promulgated August 2, 1927.

Special assessment denied.

*Walter E. Schwed, Esq.*, and *Theodore J. Witting, C. P. A.*, for the petitioner.

*A. H. Fast, Esq.*, for the respondent.

Petitioner appeals from the determination of a deficiency of $4,665.22 in income and profits taxes for the years 1919 and 1920.

It is alleged that the Commissioner erred in denying to petitioner special assessment of its taxes under sections 327 and 328 of the Revenue Act of 1918.

FINDINGS OF FACT.

Petitioner, a Colorado corporation with principal office in the City of Denver, was incorporated in April, 1918, with a capital stock of $100,000, in shares of $1 par value. It acquired the assets and businesses of two laundries operated as partnerships, the Broadway Laundry, owned by Luke and Harvey G. Goodhart, and the Queen City Laundry, owned by Fred and Leslie T. Aller, in consideration of which its stock was issued in equal portions to the Goodhearts and the Allers. The Broadway Laundry was established in 1902 and the Queen City Laundry prior thereto. The building occupied by petitioner was owned by Luke Goodheart, for the use of which it paid a rental of $275 per month. The fair rental of the building during the taxable years was $5,000 per annum, the owner paying the taxes and the tenant making repairs.

Prior to 1915, the Broadway Laundry kept no system of books, its records consisting of a check book, a file of bills payable and receivable, and inventories of accumulated assets. In 1915 it installed a double-entry system of books. In the period from 1902 to 1915 it purchased two hand laundries, the Eureka and the Citizens Hand Laundry, at a cost of $4,000, and three " wild cat " laundry routes (routes built up by drivers) at a cost of $900, thereby acquiring valuable lists of customers, but no tangible assets of value. These routes were paid for on the basis of $10 for every dollar of business per week received. During this period certain routes that had become too large were divided, the drivers being compensated for the customers withdrawn from them at the rate of $1 for every dollar of business per week withdrawn. A total of approximately $1,000 was thus expended. Machinery and equipment costing approximately $75,000 was also purchased during this period. All these expenditures were carried on the records of the company as expense and were not set up on its records as a capital investment at any time.

At the time petitioner was incorporated and the two partnerships merged therein, closing balance sheets of the two concerns were prepared, upon which no asset of good will was shown. An appraisal of petitioner's assets was made by the Lane-Lyle Co., of Chicago, which was used as a basis for the issuance of the stock, 50 per cent to the Goodhearts and 50 per cent to the Allers. The appraisal showed no asset of good will.

During the taxable years the officers of the corporation were: Luke Goodheart, president, whose duty was general supervision; Harry G.

Goodheart, secretary and treasurer, in charge of the office, drivers, advertising and all outside business; Fred Allers, general manager, in charge of the actual laundry work; and Leslie Allers, vice president, in charge of one of the offices. All the officers devoted their entire time to their duties during the taxable years, except Leslie Allers, who was in France for a portion of the year 1919. The salaries paid to its officers by petitioner aggregated $9,160 for 1919 and $15,500 for 1920. Salaries paid to their officers by two other laundries of Denver, comparable to petitioner in size and volume of business done, aggregated $12,000 for 1919 and $16,000 for 1920, in one instance; and $9,540 for 1919 and $14,560 for 1920 in the other.

Petitioner in its income-tax returns for the taxable years reported assets and liabilities as follows:

### 1919

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash | $6, 811. 94 | Accounts payable | $1, 114. 91 |
| Accounts receivable | 5, 858. 40 | Notes payable | 24. 86 |
| Inventory supplies | 3, 511. 26 | Employees' savings | 83. 00 |
| Fuel | 431. 15 | Rent | 113. 25 |
| Officers' loans | 150. 00 | Reserve for depreciation | 19, 869. 60 |
| Insurance stock | 500. 00 | Accrued items | 1, 454. 03 |
| Machinery and equipment | 55, 167. 73 | Capital stock | 100, 000. 00 |
| Delivery equipment | 9, 872. 09 | Surplus | 9, 164. 73 |
| Office equipment | 2, 581. 63 | | |
| Equipment out of use | 579. 85 | | |
| Power out of use | 175. 00 | | |
| Tools | 57. 50 | | |
| Good will | 45, 287. 38 | | |
| Deferred items | 840. 45 | | |
| | 131, 824. 38 | | 131, 824. 38 |

### 1920

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash | $4, 251. 36 | Accounts payable | $4, 935. 62 |
| Accounts receivable | 10, 988. 29 | Notes payable | |
| Inventory supplies | 1, 384. 83 | Employees' savings | 84. 00 |
| Fuel | 50. 00 | Accrued items | 1, 938. 10 |
| Officers' loans | 1, 500. 00 | Reserve for depreciation | 32, 615. 65 |
| Insurance stock | 500. 00 | Accrued taxes | 1, 724. 37 |
| Machinery and equipment | 80, 321. 39 | Capital stock | 100, 000. 00 |
| Delivery equipment | 10, 441. 72 | Surplus | 18, 618. 44 |
| Office equipment | 3, 098. 03 | | |
| Tools | 250. 90 | | |
| Good will | · 45, 287. 38 | | |
| Deferred items | 792. 28 | | |
| Liberty bonds | 50. 00 | | |
| | 158, 916. 18 | | 158, 916. 18 |

Upon audit of its returns and examination of its records, respondent made certain adjustments to invested capital claimed by petitioner, eliminating therefrom the item of " Good will," and determined deficiencies in the amounts of $2,775.56 for 1919 and $1,889.66 for 1920.

OPINION.

VAN FOSSAN: The only issue submitted is whether or not the respondent erred in his refusal to assess petitioner's taxes under section 328 of the Revenue Act of 1918, which provides for the relief of certain corporations by special assessment. That section, however, is applicable only to the particular cases designated in section 327 and any taxpayer seeking relief under section 328 must bring itself clearly within at least one of the four classes enumerated in section 327. Petitioner relies upon subdivisions (c) and (d) of section 327, alleging that there was paid in for stock a mixed aggregate of tangible and intangible property, the cost of which is not reflected upon the books of the predecessor partnerships and is not ascertainable. Petitioner insists, therefore, that invested capital can not be determined in accordance with sections 326 and 331, and that further abnormalities existed by reason of the low salaries of its officers and the low rental paid.

The facts before us are insufficient to sustain the claims of petitioner in any respect. The evidence introduced relating to the assets and condition of the records of one of the partnerships is not convincing or conclusive that the cost or value of those assets can not be determined. No evidence whatever was offered as to the assets and records of the other partnership, nor is there any evidence of the value of the alleged good will eliminated by the Commissioner. The record also fails to establish that any abnormality existed in the salaries paid officers of petitioner, as compared with those paid by other laundries of similar size in the same locality or that the rental paid by petitioner was so low as to produce an abnormal condition affecting its capital or income.

Upon consideration of the whole record we must hold that petitioner has failed to establish that respondent erred in his determination of the deficiencies. See *Appeal of Morris & Co.*, 1 B. T. A. 704; *Appeal of Watt & Shand, Inc.*, 2 B. T. A. 1273.

*Judgment will be entered for the respondent.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.